UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------- x
UNITED STATES OF AMERICA,                              :
                                                       :
             -against-                    :
                                                       :        SHORT-FORM
TAMAZ PASTERNAK, also known as "Tomas                  :        MEMORANDUM & ORDER
Pasternak,"                                            :
                                                       :        18-CR-51 (ENV) (S-3)
                                                       :
                                   Defendant.    :
-------------------------------------------------------------- x

VITALIANO, D.J.

      With jury selection completed on November 25, 2019, trial in this case is scheduled to commence on December 2, 2019. Pasternak and the government have each filed motions *in limine*. Having heard argument on November 20, 2019, and having considered the parties' submissions, the motions are resolved in the manner and for the reasons set forth below.

| Request | Ruling |
|---|---|
| I.     Defendant's Motions *in Limine* | |
| (A) Pasternak moves, pursuant to Federal Rule of Evidence 403, to exclude evidence of faulty or missing airbags in two of the vehicles purchased from him. Dkt. 104 ("Def.'s Mot.") at 1. The Indictment charges Pasternak with one count of wire fraud conspiracy and four counts of wire fraud, alleging his involvement in a scheme to fraudulently obtain Indiana "rebuilt" vehicle titles, certifying the road-worthiness of | (A) At argument, the government clarified that it intends to introduce evidence of faulty or missing airbags only as to one vehicle involved in the fraudulent scheme, and for the purpose of showing that the vehicle would not have passed a New York salvage vehicle examination because of the condition of the airbags. *See* N.Y. Veh. & Traf. Law § 398-d(6)(b), (e). The condition of that vehicle's airbags, therefore, is highly probative of |

1

vehicles that had been repossessed by insurance companies as total losses and classified by them as "salvage." The indictment further alleges that Pasternak, hiding the salvage history of these and other vehicles, fraudulently misrepresented to New York purchasers that the vehicles had a "clean" non-salvage history.

Zeroing in on the nature of a "salvage examination" that is a condition precedent to obtain New York title for the year and type of vehicles that are subject of the indictment, Pasternak contends the objective is to ensure that only non-stolen parts have been used in the rebuilding process, regardless of whether these parts are safety-related. Def.'s Mot. at 1 & n.1 (citing N.Y. Dep't of Motor Vehicles, *About the Salvage Vehicle Examination Program*, https://dmv.ny.gov/registration/about-salvage-vehicle-examination (last visited Oct. 25, 2019)). Seeking to leverage the requirements of the New York DMV Salvage Vehicle motive and intent to obtain fraudulent title concealing that vehicle's salvage history.

In that regard, the non-compliant airbags bear on the materiality of Pasternak's misrepresentations of the vehicle's fraudulent title. The materiality of Pasternak's alleged misstatements is an essential element of the charges. *See* Dkt. 107 ("Gov't's Resp.") at 1–2; *see also Neder v. United States*, 527 U.S. 1, 25, 119 S. Ct. 1827, 1841, 144 L. Ed. 2d 35 (1999). To that end, a misstatement is material if it "has a natural tendency to influence, or is capable of influencing, the decision of the decisionmaker to which it was addressed." *United States v. Weaver*, 860 F.3d 90, 94 (2d Cir. 2017) (quoting *United States v. Corsey*, 723 F.3d 366, 373 (2d Cir. 2013)).

At any rate, except by his own fiat, Pasternak makes no showing that evidence of missing or noncompliant air bags, which he acknowledged at argument was clearly probative under Rule 401, would be any more

| | |
|---|---|
| Examination, which make no express reference to safety, he argues that evidence of missing airbags, which bears on the safety of the resold vehicles, would unduly inflame the jury's emotions and distract them from the true issues of the case. *Id.* at 2. | inflammatory or prejudicial than evidence of any other missing part, including parts that DMV, unlike airbags, treats as safety-related.[1] Any prejudicial effect caused by the proffer of the airbag evidence, therefore, hardly rises to the level contemplated by Rule 403, as such evidence is not "'any more sensational or disturbing' than the charged offenses." *United States v. Barrett*, 153 F. Supp. 3d 552, 570 (E.D.N.Y. 2015) (quoting *United States v. Reese*, 933 F. Supp. 2d 579, 582 (S.D.N.Y. 2013)). <br><br> Having failed to show a prejudicial effect that would substantially outweigh the probative value of the evidence, Pasternak's motion is denied. |
| (B) Defendant moves to exclude any testimony from government witness Michael | (B) Upon the government's representation that it intends to elicit only general "rule-of- |

---

[1] Pasternak's argument, viewed holistically, is somewhat mystifying. He points out that, in New York, a vehicle without air bags will pass a safety inspection. Dkt. 109 ("Def.'s Reply") at 1 (*citing* N.Y. Comp. Codes R. & Regs. tit. 15, § 79.21). He offers the observation to establish that, because an absent or noncompliant air bag will cause a vehicle to flunk the salvage examination, its natural association with safety may carry a prejudicial effect that substantially outweighs its probative value. But, the observation establishes, at the same time, that the airbag is not regulated as a "safety" feature, much less one the absence of which would undermine a vehicle's road-worthiness.

Mulcahy, New York DMV Director of Compliance, Vehicle Safety and Clean Air, relating to (1) the discussion of the "market value" of the resold salvage vehicles, Def.'s Mot. at 2, and (2) illegal vehicle sales schemes in general, including that low prices often incentivize quick purchase "without asking too many questions." Def.'s Reply at 2.

thumb" testimony regarding salvage vehicles, Gov't's Resp. at 3, Pasternak has withdrawn his first objection.

The second objection, as did the withdrawn objection, implicates Federal Rule of Evidence 702, which permits an expert witness to opine on matters within his specialized knowledge, training or experience, and, as often expressed, on matters beyond the ken of the average juror. *United States v. Castillo*, 924 F.2d 1227, 1232 (2d Cir. 1991). Expert testimony can, consequently, provide context to assist the fact-finder with understanding the total import of the circumstances that might otherwise be missed. *United States v. Miller*, No. 18-cr-202, 2018 WL 5729738 (E.D.N.Y. Nov. 2, 2018). An expert may not, however, under the guise of his expertise, bolster a fact witness's version of events as to matters not in dispute and commonly known or understood. *United States v. Cruz*, 981 F.2d 659, 662–63 (2d Cir. 1992).

|  | Concerns about fact bolstering are at the heart of Pasternak's second objection. He does not object, though, to Director Mulcahy's proffered testimony, on the basis of his professional experience, as to the relevant terms of art and the operation of the salvage vehicle market in New York. In this light, essentially, Pasternak's motion has been mooted and is denied on that basis, but with leave to renew at trial should specific questions put to Director Mulcahy stray beyond his expertise or into the arena of fact bolstering. *See Andrews v. Metro N. Commuter R.R.*, 882 F.2d 705, 708 (2d Cir. 1989). |
|---|---|
| (C) Defendant seeks to admit evidence from the Kelley Blue Book as to the values of the vehicles he sold as a hearsay exception under Federal Rule of Evidence 803(17). Def.'s Mot. at 3. | (C) The parties agree that Kelley Blue Book information, which lists the typical purchase price of vehicles by type and condition, satisfies an exception to the hearsay rule. *See* Def.'s Mot. at 3; Gov't's Resp. at 3. The government, however, seeks to preclude such evidence under a Rule 401 and 403 analysis, arguing that specific discussion of the |

|  | vehicles' values invites juror confusion that fair purchase price was a defense to federal fraud. |
|---|---|
|  | While acknowledging that such a defense would be impermissible, Pasternak argues that evidence of the vehicles' market values could be probative of materiality or somehow could be used to impeach a purchaser-witness.[2] At any rate, in the absence of any clear direction as to defendant's actual proffer, the motion is denied as moot, with leave to either side to renew at trial. |
| (D) Pasternak moves to preclude in-court identifications of him by buyers, if called as witnesses, who were previously unable to identify him in photo arrays. Def.'s Mot. at 3. | (D) The government does not contest Pasternak's motion, which is granted on that basis. |
| II. Government's Motions *in Limine* ||
| (A) The government moves, pursuant to Federal Rule of Evidence 404(b), for a ruling | (A) Pasternak does not object to the introduction of such Rule 404(b) evidence, |

---

[2] But, defendant did concede at oral argument that, pursuant to Federal Rule of Evidence 608(b), he may not introduce the Kelley Blue Book as extrinsic evidence to impeach a witness about specific instances of his or her conduct in conjunction with the purchase.

as to the admissibility of defendant's prior use of stickers to alter salvage titles. *See* Dkt. 103 ("Gov't's Mot.") at 3–5. It describes a previous incident in 2009 in which defendant registered a vehicle with the New York DMV after concealing four "salvage" brands with bar code stickers. As a result, the Connecticut salvage title he submitted appeared "clean." *Id.* at 3–4. After the DMV discovered the vehicle was a salvage, defendant purportedly denied knowledge and claimed he had purchased the vehicle from a dealer in New Jersey, despite the sale history reflecting he purchased it from a dealership he owned. *Id.* at 4. The government characterizes this past act as "nearly identical" to the majority of the alterations charged in the Superseding Indictment, which also involved his covering salvage history brands on vehicle titles with "official-looking bar code stickers." *Id.* The government argues evidence of this prior incident is highly relevant to defendant's identity, knowledge and intent. *Id.*

provided he reserve the right to object to its form and scope. The government's motion, therefore, is granted to that extent, and subject to Pasternak's right to object to such testimony on any other appropriate ground.

| | |
|---|---|
| (B) The government moves, pursuant to Federal Rules of Evidence 901(b)(2)[3] and 701 for a ruling on the admissibility of a DMV senior investigator's identification of Pasternak's handwriting. Not seeking to qualify him as an expert witness, the government proffers that the investigator became familiar with Pasternak's handwriting over the course of his years-long investigation, and not, as Rule 901(b)(2) prohibits, for purposes of the current litigation. *See* Gov't's Mot. at 5–6. | (B) Pasternak objects only to the DMV investigator testifying that he became familiar with Pasternak's handwriting over the course of a "years-long" investigation, arguing the time frame of the investigation risks unfair prejudice. Dkt. 108 ("Def.'s Resp.") at 1. The government has agreed it will not introduce evidence as to the time frame of the investigation. Dkt. 110 ("Gov't's Reply") at 1. Accordingly, the government's motion is granted on the basis of that understanding. |
| (C) Contending that neither victim reliance nor victim negligence is an element of or an affirmative defense to fraud under federal law, the government moves, as confusing and nonprobative, to preclude argument that "any of [defendant's] victims should have known of the vehicles' salvage history . . . or that any victims did not in fact rely on his fraudulent misstatements." Gov't's Mot. at 7. | (C) The government is correct that the federal criminal fraud statutes do not require reliance as an element. *Weaver*, 860 F.3d at 95. Testimony as to Pasternak's statements, misstatements, or omissions is clearly relevant and highly material, since they are foundational to their "natural tendency to influence" the buyer. *Id.* at 94 (quoting *United States v. Corsey*, 723 F.3d 366, 373 |

---

[3] The government's motion references Rule 902, but it is clear from context it grounds its motion in Rule 901.

| | |
|---|---|
| | (2d Cir. 2013)).  But, that is a far cry from evidence or argument as to the specific impact such representations had on a specific victim of a fraudulent sale.

Pared to the core the question is whether, objectively, a *reasonable* buyer would have considered misrepresentations of a vehicle's salvage history an important purchase factor.  *See id.* at 94, 96; *United States v. Isola*, 548 F. App'x 723, 725 (2d Cir. 2013).

Because testimony or argument about the reliance (or lack thereof) of a specific buyer of a specific Pasternak vehicle is irrelevant, highly prejudicial and likely confusing to the jury, the government's motion is granted.  Testimony, either on direct or cross, as to the specific impact of Pasternak's conduct on a specific purchaser, is precluded. |
| (D) The government moves to exclude any evidence that defendant was sometimes truthful with his customers on the ground that | (D) In his response, Pasternak argues that it was his "business practice to discuss his cars' salvage histories with buyers," such that |

9

| | |
|---|---|
| such evidence is not relevant to whether he otherwise engaged in fraud in the charged offenses. *Id.* at 9. | testimony to that effect is admissible under Federal Rule of Evidence 406. Dressed in business attire, this is simply a repackaged "Willie Sutton regularly walked past banks without robbing them" argument. Not even the most generous reading of Rule 406 or courts' interpretation of that Rule can come close to supporting Pasternak's position.<br><br>However, Pasternak represented at oral argument that he may call certain purchasers of vehicles whose titles the government will proffer were fraudulent, and also, as to almost all, fraudulently obtained, to testify that, notwithstanding the fraudulent or fraudulently obtained title, Pasternak disclosed their salvage history prior to sale. Such testimony is admissible to rebut the charge of fraud as to those vehicles. *Cf. Neder*, 527 U.S. at 24 (holding that a deception is an element of federal mail fraud). In short, such testimony would be offered to show that, as to that sale, there was no deception. |

| | |
|---|---|
| | Testimony by such purchasers of specific vehicles, the title of which the government intends to introduce at trial, would be permissible. With respect to such testimony, the government's motion is denied but is otherwise granted. |
| (E) The government moves to preclude the testimony of defense witness Erica L. Eversman proffered as to the marketing of salvage and rebuilt vehicles, arguing that, even if she is qualified to testify as an expert in that field, her intended testimony is either irrelevant or is likely to confuse the jury and should be excluded under a Rule 401-403 analysis. Gov't's Mot. at 9–10. | (E) In essence, Pasternak seeks to call an expert witness, as his counsel further explained at oral argument, to put the national vehicle "title washing" industry on trial. The expert would do some sort of comparative analysis of vehicle title practices among the states and demonstrate how used vehicle marketers could legally leverage differences among the states to maximize the purchase price paid by the retail buyer. In the spotlight of her testimony would be title practices regarding salvage or rebuilt vehicles. Although some of such testimony would likely be relevant in this case, the vast majority of the testimony as scoped out by Pasternak would not.<br><br>The title washing industry is not on |

trial in this case. Nor is Eversman's opinion as to the various ways a used car marketer could leverage the title practice differences among the states legally relevant to the case on trial here. All that is on trial is whether Pasternak engaged in a scheme to misrepresent the title history of vehicles and thereby defraud retail purchasers.

As previewed, the government intends to offer proof that Pasternak joined a conspiracy which obtained fraudulent "rebuilt" vehicle titles in Indiana. It also intends to prove that Pasternak then marketed the vehicles with fraudulent Indiana title and, further, fraudulently obscured indicia on the fraudulent title indicating that the vehicle was rebuilt, a term that would encompass vehicles defined as "salvage" in New York. Additionally, the government claims it will show that, in at least one instance, Pasternak marketed a vehicle with legitimately obtained New Jersey title with rebuilt indicia and altered that indicia to obscure the fact that the

vehicle was a salvage vehicle. With that understanding, the government is correct that the broad testimony of Eversman as to the conduct of the national title washing industry would, to the extent relevant at all, be thoroughly confusing of the issues properly before the jury.

The fraud the government charges is limited to the marketing of vehicles repossessed by insurance companies following an insurance loss, such as collision or flood. Expert testimony as to how honest title could be obtained to market such vehicles as road-ready would be helpful and admissible under Rule 702. But, within the confines of the counts charged in the indictment and the proof the government intends to offer, such expert testimony, to be relevant and non-confusing to the jury, would be limited to the requirements of the states of Indiana, New Jersey and New York. Just as the government will be permitted to offer witnesses with special expertise in this field

to testify in that regard, so too would Pasternak be permitted to call Eversman as his expert in the field to offer testimony limited to this same subject area.

Accordingly, to that extent, the government's motion *in limine* restricting the testimony of Eversman is granted. Of course, should the testimony stray into other areas opening the door to more expansive testimony by Eversman, Pasternak may renew his request at that time. But, at this time, expert testimony will be limited to the titling of "salvage" vehicles, that is, vehicles repossessed by insurance companies as total losses, in the states of Indiana, New Jersey and New York, and the manner in which such vehicles could then be titled as road-ready in New York.

So Ordered.

Dated: Brooklyn, New York
November 26, 2019

/s/ USDJ Eric N. Vitaliano
------------------------------
ERIC N. VITALIANO
United States District Judge